## THE COLUMBIAN UNIVERSITY *v.* TAYLOR.

EQUITY PRACTICE; DEMURRER; CONCLUSIONS OF LAW; WILLS; TRUSTS; LACHES.

1. A charge in a bill in equity, that a paragraph of a will set out in the bill is void for uncertainty, is a conclusion of law, which cannot be ad-

mitted by a demurrer, and this court in passing upon the demurrer will not be bound by admissions of the demurrant that the devise is invalid.

2. *Quære,* Whether the heirs at law of a testator who devised his real estate to a trustee for a charitable object, naming another trustee to act if the first one should fail to execute the trust, may elect, where they claim that the trust is invalid for uncertainty, to proceed in equity against both trustees to avoid the trust and recover the property; or whether their only remedy is at law by ejectment against the first trustee still in possession.

3. If a donor sufficiently shows his intention to create a charity, and indicates its general nature and purpose, and describes in general terms the class of the beneficiaries, the trust will be sustained and enforced, although there may be indefiniteness in the declaration and description, and although much may be left to the discretion of the trustees. (Following *Speer* v. *Whitney,* 24 App. D. C. 187.)

4. The provisions of a will devising real estate in trust to an institution of learning to provide for the free education of young men to fit them for admission to the Naval Academy of the United States, *held* to create a special charitable trust not void for uncertainty or incapacity of execution apparent on its face.

5. Where it is sought in equity to avoid a devise as invalid on its face, the rule of the statute of limitations will be applied by analogy, and relief will be denied where there has been a delay of more than the statutory period in bringing the suit.

6. Where a bill in equity alleges that a devise for a special charitable purpose is invalid for uncertainty, and also that, after years of effort by the trustee to execute it, it has been demonstrated that it is incapable of execution, and it appears that the trust is not void on its face, a resulting trust will nevertheless arise in favor of the heirs at law of the testator because the trust is incapable of execution.

7. In such a case, a demurrer on the ground of laches is properly overruled, where it does not appear from the bill when the trust came to an end by reason of being incapable of execution.

No. 1497. Submitted February 9, 1905. Decided March 7, 1905.

HEARING on an appeal (specially allowed) by the defendants from an order of the Supreme Court of the District of Columbia, overruling a demurrer to a bill in equity seeking to avoid a trust created by a will, to recover certain real estate, and for an account and recovery of the revenues thereof.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This is a special appeal allowed by order of this court from an order overruling appellant's demurrer to a bill in equity.

The bill filed by appellees, Brooke P. Taylor, Nannie M. McCormick, and Rosalie McCormick, as heirs at law of Levin M. Powell, deceased, seeks to avoid a trust created by the will of said Powell, and to recover certain real estate in the City of Washington, and to have an account and recovery of the revenues thereof.

It is alleged that said Levin M. Powell, an admiral on the retired list of the United States Navy, died January 15, 1885, leaving a will that had been executed October 27, 1884. The paragraph of the will which creates the trust reads as follows:

"Item:—Fifth, it being my wish and desire to make some contribution to the Navy of the United States, of which I have been for so many years, I hope, a worthy member, and so in a. measure to pay off the debt I feel I owe the honorable profession I have pursued through a long lifetime, and to that end to establish in the Columbian University in the District of Columbia, in a manner most conducive for that purpose, a means for the education of such young men as may be willing to profit therefrom in the branches of education best fitted to prepare them for officers of the line in the Navy of the United States, or for the places of mates or captains in the merchant marine service of the United States, I do hereby give, devise,. and bequeath to the said Columbian University and its successors all those certain pieces or parcels of ground situate and lying in said city of Washington, and known and distinguished on the plats of said city as lot lettered C, and the east five feet from front to rear of lot D, of Samuel D. King's subdivision of lots numbered one (1), two (2), three (3), thirty-two (32), and thirty-three (33), in square numbered one hundred and twenty-six (126), duly recorded in the surveyor's office of said city,. beginning for the said parcel at a point on I street north,. distant seventy-eight (78) feet west from the corner of I and 17th street, and running thence north parallel with 17th street

one hundred and five (105) feet to a fifteen-foot alley; thence west with said alley thirty-five (35) feet; thence south one hundred and five (105) feet to the north line of said I street; thence east with said I street thirty-five (35) feet to the point of beginning, together with all and singular the improvements, rights, privileges, and appurtenances to the same belonging, in trust for the purposes following, and for no other purpose whatever,—that is, in trust to create an endowment to be known as the Admiral Powell endowment, and with that view to take the said property, and the same to rent from year to year or to lease for a term of years as to the trustees and overseers of said university shall seem best; and the rents, issues, and profits arising therefrom, after first paying out of the same the taxes, insurance, repairs, and other expenses, to devote as far as the same will go, under such regulations as to the said trustees and overseers may seem best, to the free education of such young men as may desire to take advantage of the said endowment by way of their preparation for entrance into the Naval Academy at Annapolis, Maryland, or such as may fit them to become mates or masters in the merchant marine service of the United States, such preparation to be confined in the case of each young man so embracing the advantages of the said endowment to one year, and to include principally the studies following,—that is to say, arithmetic, geometry, trigonometry, and astronomy, with the use of astronomical instruments, the construction of charts, and the application of this knowledge to hydrographical survey by latitude and longitude, and if possible such study as will give to such young men a knowledge of scientific voyages of discovery, and other matters relating to war and commerce on the high seas; and it is further my desire that this endowment shall, if possible, embrace in its benefits such apprentices as, having filled their time in the great steam manufactory establishments of the country, may apply for appointment from civil life in the steam engineer department of the United States Navy, to such I would like to have a year's education afforded under such regulations as the president and faculty of the university may think proper; and should it at

any time for any reason be impossible to carry into effect the trusts, provisions, and conditions having relation to and herein imposed upon this bequest by me made for the creation of the endowment described on the part of the said Columbian University, or should it be made manifest at any time that the said trust is not being administered in accordance with my wishes and desires, and in conformity with the conditions specified, then, and in such case it is my will and desire that the said endowment shall be placed in other hands, and to that end, and upon the happening of the contingency mentioned, I do hereby give, devise, and bequeath the said property to the Johns Hopkins University of Baltimore, in the State of Maryland, and its successors, to be taken and held by the said university or the officers thereof proper for that purpose, upon the trusts and for the purposes hereinbefore particularly set forth in the bequest of said property to the Columbian University, in such manner that the purposes of the said endowment as by me indicated may be fully carried into effect."

The bill then proceeds to charge:

"VIII. That acting upon its supposed right under said devise, the said defendant, the Columbian University, some time in the year 1885, took possession of said premises and real estate upon the trust set forth in said will, and has had and retained absolute possession of the same ever since as it does now, having had the same rented to various tenants during said time.

"IX. That said defendant, the Columbian University, issues and has for more than sixteen years issued a catalogue, publishing its classes, the names of all its students, its instructors and officers, and the many and various schools of education it maintains; that this catalogue is widely circulated throughout the United States; that among other things it has from time to time, during the past sixteen years, advertised 'the Powell scholarships;' that such advertisement was contained in the said catalogue for the scholastic years of 1900 and 1901, as will more particularly appear by reference to pages 94 and 95 of said catalogue, which is herewith filed as Exhibit No. 3, and which it is prayed may be taken and considered as a part

hereof. That substantially the same advertisement · has been inserted in said catalogue issued from time to time for the past sixteen years; that, notwithstanding the said wide circulation of said advertisements, the said defendant, complainants are informed, believe, and therefore charge, has been wholly unable to execute said trust.

"X. That the complainants are advised and therefore charge and allege that said devise is so indefinite and the trust intended to have been created thereunder so uncertain as to its objects and subjects that it was impossible of execution by said defendant, the Columbian University, or by the said defendant, the Johns Hopkins University, has in no wise been executed by either of them in any respect whatsoever, and that it is now and ever will be impossible of execution by either of them.

"XI. That the complainants are advised and therefore charge and allege that by reason of the indefiniteness of the purposes of said intended trust, and the hopeless uncertainty of the possible beneficiaries, 'who may desire to take advantage of said endowment,' the said devise and the trust sought to have been created thereunder is wholly void and of none effect.

"XII. That complainants are advised and therefore charge that the defendants are without authority to carry said trust into execution."

The prayers are that the paragraph of the will before set forth be decreed to be void; that the trust be declared void, and the title to the premises be declared to be in the complainants; that the Columbian University be required to render a full account of the rents and profits of the said premises, and to pay over the sum ascertained to be due; that all necessary orders and references may be made, and for such other and further relief as the nature of the case may require.

*Mr. Wm. Mattingly* and *Mr. John B. Larner* for the appellants.

*Messrs. Norton & Boothe* and *Mr. Henry E. Davis* for the appellees.

Vol. XXV.—9.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. For the purpose of determining the errors assigned on the order overruling the demurrer, the appellants insist that they have fully admitted the invalidity of the devise as contended for by the appellees. We cannot proceed upon this assumption. The paragraph of the will set out in the bill speaks for itself, and the charge that it is void is a conclusion of law, which cannot be admitted by demurrer, as would be an allegation of fact. If, as contended by one party, and, for the purposes of the demurrer, admitted by the other, the invalidity of the devise is apparent upon its face, the appellees might probably have maintained an action of ejectment against the Columbian University to recover the possession of the premises. *Ould* v. *Washington Hospital for Foundlings,* 95 U. S. 303, 24 L. ed. 450. But this action could not be maintained against the Johns Hopkins University, which is not a sharer of that possession, and which would not be bound by a judgment obtained against its codefendant. For the reason that the cause of action involves the construction of a trust, which is a matter peculiarly of equity jurisdiction, as well as the avoidance of a multiplicity of suits, where the defendants have a common interest in the essential questions of law and fact, it may be that the appellees would, at least, have their election to proceed in equity as they have done. 1 Pom. Eq. Jr. §§ 139, 181. However, under our construction of the paragraph of the will creating the trust, it is not necessary to determine whether the jurisdiction in equity is maintainable upon those grounds. In giving this construction we have been somewhat embarrassed by the admissions of the appellants and their failure to argue the question upon its merits.

We are of the opinion that the provision of the will providing for the free education of young men in order to fit them for admission to the Naval Academy of the United States, and making a devise therefor in trust to an incorporated institution of learning, creates a special charitable trust. *Vidal* v. *Philadelphia,*

2 How. 127, 192, 11 L. ed. 205, 232; *Ould* v. *Washington Hospital for Foundlings,* 95 U. S. 303, 24 L. ed. 450; *Speer* v. *Whitney,* 24 App. D. C. 187; 2 Pom. Eq. Jur. §§ 1019, 1024.

We are also of the opinion that the trust is not void for uncertainty or incapacity of execution apparent upon its face.

As said by Mr. Pomeroy: "One of the distinguishing elements of a 'charitable' as compared with an ordinary trust consists in the generality, indefiniteness, and even uncertainty which is permitted in describing the objects and purposes of the beneficiaries. From the very definition of a 'charitable trust' the beneficiaries are always an uncertain body or class; but the doctrine goes further than this. If the donor sufficiently shows his intention to create a charity, and indicates its general nature and purpose, and describes in general terms the class of the beneficiaries, the trust will be sustained and enforced, although there may be indefiniteness in the declaration and description, and although much may be left to the discretion of the trustees." 2 Pom. Eq. Jur. § 1025; *Ould* v. *Washington Hospital for Foundlings,* 95 U. S. 303, 311, 24 L. ed. 450, 451; *Speer* v. *Whitney,* 24 App. D. C. 187.

Under this construction the legal title passed to the trustee under the devise, and hence the court was right in overruling the demurrer on the ground of want of jurisdiction in equity.

2. If the invalidity of the devise were apparent upon its face, the objection on the ground of laches in bringing the suit would be fatal, for a court of equity, in a case like this, should, by analogy, apply the rule of the statute of limitations, which bars an action of ejectment after fifteen years from the time the right to maintain the action shall have accrued. D. C. Code, § 1265. By the allegations of the bill, more than fifteen years elapsed between the time that the Columbian University entered into possession under the devise and the commencement of the suit, and there is nothing to show that the appellees were at that time under a disability of any character.

But, as we have seen, the right of action did not accrue immediately upon the entry of the Columbian University into possession under the devise. If there be a right of action at all

it must fall under the ninth paragraph of the bill, which alleges that after efforts made to carry out the intention of the testator the incapacity of the execution of the trust has been demonstrated. The trust created by the will is not a general charitable trust, but is expressly limited to the purposes specified, and no other. If the trust has failed of its object by reason of the facts alleged, and thereby come to an end, a resulting trust at once arose in favor of the heirs at law of the testator, enforceable by this proceeding in equity. *Hopkins* v. *Grimshaw,* 165 U. S. 342, 353, 41 L. ed. 739, 743, 17 Sup. Ct. Rep. 401.

As it does not appear when the trust certainly came to this end, the learned justice presiding in the equity court did not err in holding that the right to maintain the suit had not been lost by laches on the part of the complainants.

The order will therefore be affirmed, with costs, and it is so ordered.                              *Affirmed.*